THE STURGEON RIVER BOOM CO. v. THOMAS NESTER.

*Logging—Powers of boom companies—Questions of fact.*

In an action by a boom company to recover for running and 'sorting logs which have been allowed to mingle with those in its charge, it is for the jury to decide whether any of the various items of the account properly enter into it, and whether the charges of the company are reasonable; whether it was proper for the company to interfere to take care of defendant's logs, or to detain them temporarily to prevent loss to other owners; and whether an artificial channel provided by the company was useful for clearing the river and securing the safe delivery of logs.

Error to Houghton. (Williams, J.)   Oct. 9.—Oct. 15.

ASSUMPSIT.   Plaintiff brings error.   Reversed.

*Chandler, Grant & Gray* and *Hanchett & Stark* for appellant.

*T. M. Brady* and *Isaac Marston* for appellee.

CAMPBELL, J.   In this case plaintiff sued defendant for services in running and assorting logs in Sturgeon river, which is a stream in the Upper Peninsula emptying into Portage lake.   The proofs showed that defendant's logs were run down the river to the upper boom of plaintiff in the same run with a large amount of other logs; that the boom was kept closed so long as was thought necessary to prevent the injury which might be expected from high water in floating the logs out of

the river, where there was risk of their being scattered in the lake or stranded on land; that as soon as was thought safe the logs were let down in such quantities as seemed best, and after reaching plaintiff's lower boom, which was about three-quarters of a mile above the mouth, were separated so as to allow defendant's logs to be run down alone, as they were by his men. At the lower boom is an artificial cut from the river into Portage lake, which plaintiff made to avoid the alleged difficulty arising from shoals and other causes, in floating logs conveniently and safely through the mouth of the river, where there are several channels separated by shoals and bars, and more or less sand-bars outside. This cut was and is used to take logs by a short passage into Pike's bay, which is a part of the lake, where they are put into the various pockets or storages of the several log-owners.

There is no question in fact that the plaintiff ran and assorted the logs. The controversy turned chiefly on an alleged want of right to do so, and partly on the amount of charges. But as the circuit judge took the case entirely away from the jury, and no reasons appear why he did so, we are compelled to confine our attention to such matters as are most obvious.

We have found so little in this case to distinguish it from *Hall v. Tittabawassee Boom Co.* 51 Mich. 377, that we do not propose to discuss the general subject. That case recognized some of the difficulties which surround the whole subject, but held that, in the absence of any practicable State supervision, the companies have nevertheless a right to be properly paid for their services, and a right to a reasonable discretion in the management of their business. We do not think it desirable to open any part of the subject that was there settled.

Since the controversy arose in that case the legislative authority has passed some statutory provisions which have a bearing on a part of the controversy. By the amendatory statute of 1883, pp. 72, 73, it is provided that for all work lawfully done by them, whether by contract or otherwise, such corporations shall have a right to collect "such uniform and reasonable sum as is hereinafter provided," and that such

sum should be estimated so as to cover their actual business expenses of various kinds, and all other necessary and proper costs and expenses, and a reasonable salary for the officers, and a profit of not less than 12 per cent. on capital stock. These rates were to be fixed by the directors annually, and in case they turn out, when the year's business is closed, to be excessive, the excess is to be refunded ratably.

It was further provided that if any owner shall have logs in their part of the stream without making adequate provision for handling them, they shall be regarded as delivered to the company.

It cannot be disputed that uniform rates to all parties for the same services are always to be desired, nor [claimed] that the Legislature has included in the means of estimate any unlawful basis. And so far as any case involves the inquiry of fact as to whether anything is set up which does not justify its being regarded as entering into the fund for computation, we can see no reason why it should not be laid before the jury for their consideration. None of the items relied upon, as set out in the record, could in our opinion be shut out from such consideration. If it should be made to appear that any of them did not in fact belong to the proper and legitimate outlay, we cannot anticipate the testimony in a future case, or decide questions of fact in the present. We cannot say, as matter of law, that the charges made were unreasonable, or if so, to what extent.

There was testimony distinctly tending to show that defendant's logs could not pass down by the upper boom without requiring attention, and there was testimony that the interference of the company was proper. Any dispute, therefore, if there was room for one, was for the jury, and should have been left to them.

There was also testimony which, if true, showed that a detention at the upper boom was necessary to prevent probable loss and disaster to the logs in the river. If so, it cannot be said to have been improper. There was also testimony tending to prove the utility of the cut-off in clearing

the river and in making the safe delivery of logs more secure. This was properly before the jury.

Without going further, we think it very clear that the case should not have been taken from the jury, but that the plaintiff's claim should have been laid before them for their verdict.

The judgment must be reversed and a new trial granted.

The other Justices concurred.